**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE VIRTUS INVESTMENT
PARTNERS, INC.
SECURITIES LITIGATION

Case No. 15-cv-1249 (WHP)

ECF Case

**ORAL ARGUMENT**
**REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

Joseph M. McLaughlin
Daniel J. Stujenske
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel.: 212-455-2000
Fax: 212-455-2502

*Attorneys for Defendants*

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................3

      A.     Defendants and Related Entities .................................................................3

      B.     Unaffiliated Third-Party F-Squared ..........................................................4

      C.     AlphaSector Funds ....................................................................................4

      D.     F-Squared's SEC Investigation and Settlement .........................................5

      E.     Plaintiff's Claims .......................................................................................6

LEGAL STANDARDS ........................................................................................................7

ARGUMENT .....................................................................................................................8

   I.     Plaintiff Fails to Plead an Actionable Misstatement Under Section 10(b) .............8

      A.     Defendants Did Not Make Any Misrepresentations Regarding
              AlphaSector's "Live" Historical Track Record ...........................................8

      B.     The Complaint's Remaining Categories of Misstatements Are
              Inactionable .............................................................................................10

      C.     Under *Janus*, Plaintiff's Claims Against VIP and Messrs.
              Angerthal, Cerutti and Waltman Fail as a Matter of Law as to
               Statements They Did Not Make ................................................................15

   II.     The Complaint Fails to Plead a Strong Inference of Scienter ...............................17

      A.     Plaintiff Does Not Allege a Fraudulent Motive .........................................17

      B.     The Complaint Does Not Plead Facts Supporting a Compelling
              Inference of Conscious Misbehavior or Recklessness ...............................19

      C.     Other Alleged Circumstantial Evidence Regarding the Individual
              Defendants Does Not Support Scienter .....................................................23

   III.    Plaintiff Does Not Plead an Actionable Control Person Claim Under
           Section 20(a) .........................................................................................24

CONCLUSION .................................................................................................................25

## Table of Authorities

**Cases**

*Amgen Inc. v. Conn. Ret. Plans*,
  133 S. Ct. 1184 (2013) ................................................................................................... 7

*Ashcroft v. Iqbal*,
  56 U.S. 662 (2009) ........................................................................................................ 8

*ATSI Commc'ns v. Shaar Fund, Ltd*,
  493 F.3d 87 (2d Cir. 2007) ..................................................................................... 17, 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 7

*Campo v. Sears Holding Corp.*,
  371 F. App'x 212 (2d Cir. 2010) ................................................................................ 21

*Carpenters Pension Trust Fund v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014) ....................................................................................... 24

*Ciresi v. Citicorp*,
  782 F. Supp. 819 (S.D.N.Y. 1991) ............................................................................. 15

*City of Brockton Ret. Sys. v. Shaw Grp.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008) ........................................................................ 19

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ..................................................................................................... 17

*ECA v. JPMorgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ....................................................................................... 12

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) ................................................................................. 13, 14

*Field v. Trump*,
  850 F.2d 938 (2d Cir. 1988) ....................................................................................... 12

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ........................................................................ 24

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ...................................................................................... 21

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................ 25

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................................................................. 18

*In re China Valves Tech. Sec. Litig.*,
   979 F. Supp. 2d 395 (S.D.N.Y. 2013) ................................................................. 17

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004). ........................................................... 12, 15

*In re FBR Inc. Sec. Litig.*,
   544 F. Supp. 2d 346 (S.D.N.Y. 2008) ................................................................. 11

*In re GlaxoSmithkline PLC Sec. Litig.*,
   No. 05 CIV. 3751 (LAP), 2006 WL 2871968 (S.D.N.Y. Oct. 6, 2006) .................................. 14

*In re Lehman Bros. Sec. & ERISA Litig.*,
   799 F. Supp. 2d 258 (S.D.N.Y. 2011) ................................................................. 13

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) .................... 18, 24

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................................. 13

*In re Molycorp. Inc. Sec. Litig.*,
   No. 13 Civ. 5697 (PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ................................ 24

*In re Moody's Corp. Sec. Litig.*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009) ................................................................. 14

*In re MRU Holdings Secs. Litig.*,
   769 F. Supp. 2d 500 (S.D.N.Y. 2011) ................................................................. 21

*In re Mut. Funds Inv. Litig.*,
   487 F. Supp. 2d 618 (D. Md. 2007), *rev'd on other grounds*,
   *In re Mut. Funds Inv. Litig.*, 566 F.3d 111 (4th Cir. 2009),
   *rev'd sub nom Janus Capital Grp., Inc. v. First Derivative Traders*,
   131 S. Ct. 2296 (2011)............................................................................... 16

*In re NQ Mobile, Inc. Sec. Litig.*,
   No. 13CV7608, 2015 WL 1501461 (S.D.N.Y. Mar. 27, 2015) (Pauley, J.) ............................ 25

*In re Optimal U.S. Litig.*,
   No. 10 CIV 4095 SAS, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011)..................................... 16

*In re ProShares Trust Sec. Litig.*,
   728 F.3d 96 (2d Cir. 2013) ........................................................................... 10

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................................................ 16

*In re UBS AG Sec. Litig.*,
    No. 07 Civ. 11225 RJS, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012),
    *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) .............................................................................................. 16

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) ................................................................................................ 15, 17

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ........................................................................................ 17, 19

*Lapin v. Goldman Sachs Grp., Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006) ................................................................................ 25

*Local No. 38 Intern. Broth. of Elec. Workers Pension Fund v. Am. Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010) ................................................................................ 24

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ........................................................................................ 15, 22

*Palmer Kane LLC v. Scholastic Corp.*,
    No. 12 Civ. 3890 (TPG), 2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014) .................................. 8

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009) ...................... 8

*Podany v. Robertson Stephens, Inc.*,
    318 F. Supp. 2d 146 (S.D.N.Y. 2004) ................................................................................ 13

*Richman v. Goldman Sachs Group*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012) ................................................................................ 15

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ........................................................................................ 11, 13

*San Leandro Emergency Med. Plan v. Phillip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996) ................................................................................................ 19

*Santa Fe Indus. v. Green*,
    430 U.S. 462 (1977) ......................................................................................................... 12

*Scott v. Gen. Motors Corp.*,
    605 F. App'x 52 (2d Cir. 2015) ......................................................................................... 12

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ................................................................................ 17

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002) .................................................................................. 3

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) .................................................................................. 20

*Taylor City Gen. Empls. Ret. Sys. v. Magna Int'l Inc.*,
    967 F. Supp. 2d 771 (S.D.N.Y. 2013) ............................................................. 18, 19

*Tellabs, Inc. v. Makor Issues & Rights,
    Ltd.*, 551 U.S. 308 (2007) ................................................................................ 17, 23

*Zucco Partners LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................................. 22

**Statutes and Rules**

15 U.S.C. § 78u-4(b) .......................................................................................... 8, 9, 17

Fed R. Civ. P. 12(b)(6) ............................................................................................ 1, 7

Fed R. Civ. P. 9(b) ............................................................................................... 1, 8, 17

Securities Exchange Act Section 10(b) .............................................................. passim

Securities Exchange Act Section 20(a) ............................................................... 3, 7, 24

Defendants Virtus Investment Partners, Inc. ("VIP" or the "Company"); Virtus Opportunities Trust ("VOT"); and George R. Aylward, Michael A. Angerthal, Jeffrey T. Cerutti, and Francis G. Waltman (the "Individual Defendants," and, with VIP and VOT, "Defendants") respectfully submit this memorandum and the accompanying Declaration of Daniel J. Stujenske in support of their motion to dismiss the Consolidated Class Action Complaint ("Complaint") with prejudice pursuant to the PSLRA and Rules 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

This suit seeks to hold Defendants liable for the conduct of a third-party, F-Squared. In December 2014, F-Squared entered into a settlement with the SEC and admitted to making false statements about the historical performance of F-Squared's proprietary AlphaSector strategy. This case followed in the wake of F-Squared's settlement. But Plaintiff is not suing F-Squared. Defendants' only relationship with F-Squared is that a subsidiary of defendant VIP contracted with F-Squared as a sub-adviser for certain mutual funds (registered investment companies which are a series of defendant VOT, a statutory series trust); the funds then employed the AlphaSector strategy. Plaintiff has searched high and low for an actionable misstatement made by one of the Defendants. It has not found one. Instead, it recasts the actual language of SEC filings, or points to tangential disclosures that are neither false nor actionable.

To avoid dismissal, the Complaint must, *inter alia*, (i) show that each of the Defendants made material misrepresentations, and (ii) plead with particularity facts that give rise to a strong inference of scienter on the part of each Defendant. The Complaint fails to do either.

First, the Complaint fails to plead facts showing any material misstatement. The fundamental flaw in Plaintiff's claim is that no statements attributable to Defendants represented that the AlphaSector strategy generated actual returns on live assets between 2001 and 2008. To argue otherwise, Plaintiff partially quotes half-sentences or redefines words. Plaintiff points to

charts in a VOT mutual fund prospectus reporting the returns of two indices calculated and published by NASDAQ—not the returns of the funds.  VOT expressly disclosed that an index cannot be invested in directly, and that the chart otherwise does not represent the returns obtainable with live assets.  Plaintiff nevertheless claims that VIP common stock investors would interpret this VOT disclosure to mutual fund investors contrary to the meaning of index returns, and believe the charts reflected live asset returns between 2001 and 2008.  Likewise, Plaintiff cites half of a sentence that says the inception dates of the indices were in 2001, and ignores the remainder of the sentence that says the indices commenced calculation in 2008 and 2011.

Seeking to paper over this flaw, and the fact that most Defendants were not *Janus* "makers" of the above statement, Plaintiff has padded the Complaint with four tag-along categories of purported misstatements.  These statements seemingly consist of anything Plaintiff could find that in any way relates to F-Squared.  For example, Plaintiff claims that Defendants falsely stated that VIP was "diligent" in selecting sub-advisers, a statement Plaintiff assumes must have been false because F-Squared admitted to wrongdoing.  Similarly, Plaintiff asserts that Defendants falsely stated that the AlphaSector strategy was "dynamic" and "analytical," which Plaintiff says was incorrect because the strategy was, in Plaintiff's view, too simple.  Not only does Plaintiff fail to allege that these statements, and others, are false, but Plaintiff also ignores the large body of law holding that such statements are not actionable.  Courts have declined to extend securities law liability to cavils about how diligent is diligent enough, or how dynamic is dynamic enough.  Whether characterized as non-actionable puffery or non-actionable allegations of mismanagement, such statements do not support a claim for securities fraud.

Second, the Complaint fails to plead the required cogent and compelling basis for a strong inference of scienter.  Plaintiff does not allege any "suspicious" insider sales by the

Defendants sufficient to support a showing of fraudulent motive.  And the Complaint's attempt implausibly to recast events showing responsible corporate behavior as circumstantial evidence of conscious misbehavior, entirely based on a statement attributed to an unidentified confidential witness, is equally unavailing.

Third, in the absence of a viable Section 10(b) claim, dismissal of Plaintiff's Section 20(a) ) control person claims against the Individual Defendants is required.

## BACKGROUND[1]

### A.    Defendants and Related Entities

Defendant VIP is a publicly-traded company providing "investment management and related services to individuals and institutions" through both affiliated investment managers and unaffiliated sub-advisers.  Ex. A at 1 (VIP 2014 Form 10K).  Among other products, VIP offers open-end mutual funds, including, until recently, the AlphaSector Funds sub-advised by F-Squared.  *See id.* at 3.[2]  The investment advisor for the AlphaSector Funds was non-party Virtus Investment Advisors, Inc. ("VIA"), VIP's wholly-owned subsidiary and an SEC-registered investment adviser.  *See* Compl. ¶ 29.  Defendant VOT is a statutory trust and an SEC-registered open-end management investment company that filed registration statements and prospectuses for a number of mutual funds, including the Virtus AlphaSector Funds.  *Id.* ¶¶ 29, 35.

Plaintiff asserts Section 10(b) claims against Defendants VIP and VOT and four Individual Defendants: (1) George R. Aylward—President, CEO and Director of VIP and President and Trustee of VOT; (2) Michael A. Angerthal—Executive Vice President, Treasurer

---

[1]    On this motion, the Court must accept well-pled factual allegations as true.  But bald contentions, characterizations, spin and legal conclusions of falsity are not well-pled allegations of fact, and will not suffice.  *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

[2]    In  May 2015, the AlphaSector Funds changed sub-advisers and investment strategy, and were renamed the "Virtus Trend" Funds.  *See* Compl. ¶ 133.

and CFO of VIP; (3) Jeffrey T. Cerutti—former Executive Vice President and Head of

Distribution for VIP until April 1, 2014; and (4) Francis G. Waltman—Executive Vice President

and Head of Product Management of VIP and Senior Vice President of VOT.  *See id.* ¶¶ 30–34.

      **B.**    **Unaffiliated Third-Party F-Squared**

F-Squared Investments Inc. ("F-Squared") is an investment advisor founded by Howard

Present, its former President and CEO, in 2006.  *Id.* ¶ 37.  In 2009, F-Squared entered into a sub-

advisory agreement with VIA in connection with the Virtus AlphaSector Funds, a new "family

of funds" based on F-Squared's proprietary "AlphaSector" investment strategy.  *Id.* ¶¶ 5, 53–54.

Plaintiff does not allege any other relationship between F-Squared and any Virtus entity.  F-

Squared is not a party to this action and has never been a corporate affiliate of VIP, VOT, or

VIA.  Nor has F-Squared ever shared management or employees with VIP, VOT, or VIA.

      **C.**    **AlphaSector Funds**

During the putative Class Period, VOT filed registration statements and prospectuses for

several Virtus AlphaSector mutual funds, including the Virtus Premium AlphaSector Fund and

the Virtus AlphaSector Rotation Fund.  *E.g.*, Compl. ¶¶ 29, 56, 58.  For example, in a January

25, 2013 Registration Statement for various funds including the Virtus Premium Alpha Sector

Fund, the VOT disclosed the fund's investment objective ("long-term capital appreciation"),

shareholders' fees and expenses, investment strategies and risks, and certain performance

information.  Ex. B at 106–08.

VOT's January 25, 2013 Registration Statement also disclosed the fund's average annual

total returns, both for one year and "[s]ince [i]nception" of the Premium AlphaSector Fund on

July 1, 2010; that F-Squared was one of the fund's sub-advisers; and that Mr. Present had served

as the fund's portfolio manager "since inception in July 2010."  *Id.* at 108–09.

Entirely separate from this disclosure about the *fund's* returns, the Registration Statement

disclosed that the Premium AlphaSector Fund "seeks to track the Premium AlphaSector Index (ASRP), a public index published by NASDAQ." *Id.* at 107. An appendix to the Registration Statement, entitled "Additional Information About the Premium AlphaSector Index," showed "performance of the Premium AlphaSector Index as compared with the performance of the S&P 500 Index" by listing annual returns of *the index* beginning in 2003 (i.e., 7 years before the July 1, 2010 fund inception date). *Id.*, App. C at 244. The appendix noted that *neither index* was "available for direct investment and their performance does not reflect the fees, expenses, or taxes associated with the active management of an actual portfolio." *Id.* Footnote 1 noted that "[t]he Index inception date is April 1, 2001; it commenced daily calculation and dissemination by NASDAQ OMX with a base value of 100.00 on January 3, 2011." *Id.*[3]

VIP, in contrast, made no statement about performance information for any of the AlphaSector funds or of the AlphaSector Premium Index (published by NASDAQ) in any SEC filings, investor presentations, earnings calls, or press releases identified in the Complaint.

### D. F-Squared's SEC Investigation and Settlement

As reported in a *Wall Street Journal* article relied on by the Complaint, Howard Present sent a letter to clients, including VIA, in October 2013 telling them to "discard all previous material and use only the new information going forward," and sent another letter on May 9, 2014 stating that "investors should 'completely disregard any previously provided or published performance information relating to the period April 2001 to September 2008.'" Ex. C. The May 9 letter further stated that although F-Squared had stated that the AlphaSector U.S. equity index had been based on "buy and sell signals utilized by a wealth management firm to make

---

[3]     These same disclosures are found in a VOT prospectus attached to the Complaint as Exhibit A. Although Plaintiff dramatically announces that Exhibit A was unearthed only through an investigation and discussions with a confidential witness, VOT's prospectuses were filed with the SEC and are available to anyone at www.sec.gov.

investment decisions," the SEC "recently informed F-Squared . . . that 'the wealth management firm was not in fact using these buy and sell signals to manage client assets . . . .'"  *Id.*  Finally, the letter also stated that the methodology F-Squared used to translate the data signals it licensed from a third party to calculate its index values was "systematically incorrect."  *Id.*; *see also* Compl. ¶ 111.

According to the Complaint, public news sources reported on September 3, 2014 that F-Squared received a Wells Notice indicating the SEC Enforcement Division's intention to recommend commencement of an enforcement action against F-Squared.  Compl. ¶ 112.  Mr. Present resigned from F-Squared, and was removed as portfolio manager for the Virtus AlphaSector funds, in November 2014.  *Id.* ¶ 116.  On December 22, 2014, F-Squared settled with the SEC, paying disgorgement of $30 million plus a $5 million penalty.  *See id.* ¶¶ 117–28. Among other things, the SEC's cease and desist order states that F-Squared and Mr. Present "used data" in connection with the AlphaSector investment strategy "they were at least reckless in not knowing was back-tested to create hypothetical performance of AlphaSector," and "[f]rom September 2008 to September 2013, F-Squared advertised the hypothetical historical performance as 'not back-tested' and based on an actual strategy that had been used to manage live assets from April 2001 to September 2008."  Ex. D at 2.  The SEC's order also says that, in addition, F-Squared made a "data compilation error" that resulted in erroneous performance information for the pre-October 2008 period.  *Id.* at 3.  Plaintiff details these allegations about F-Squared's conduct at length in the Complaint, although F-Squared is not a defendant.  *See* Compl. ¶¶ 117–28.  None of the Defendants was mentioned in the SEC's December 2014 cease and desist order.

### E.    Plaintiff's Claims

Plaintiff asserts Securities Exchange Act claims against all Defendants under Section

10(b) and against the Individual Defendants under Section 20(a).  Plaintiff's primary allegation is that Defendants "touted the AlphaSector funds' false and misleading track record in numerous public statements, including in documents publicly-filed with the SEC."  Compl. ¶ 140.  But in fact, the Complaint points only to the allegedly misleading presentation of performance information for the AlphaSector *indices* in registration statements and prospectuses filed solely by VOT—not in any statements by VIP or the Individual Defendants.  The four remaining categories of alleged misstatements are transparent attempts to plead statements by other Defendants, no matter how tenuously linked to this central, meritless allegation.  Plaintiff alleges that Defendants made misrepresentations and omissions regarding their selection and monitoring of sub-advisers (namely, F-Squared); their characterizations of the AlphaSector strategy as a "dynamic," "analytical" and "proprietary" model; the purportedly improper reasons underlying Virtus' *accurately reported* revenues; and Defendants' statements in quarterly SEC filings that they did not believe any legal or regulatory matters would have a "material adverse effect" on the Company.  None of these purported misrepresentations is actionable.

## **LEGAL STANDARDS**

To state a claim under Section 10(b), a plaintiff must allege facts sufficient to show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Amgen Inc. v. Conn. Ret. Plans*, 133 S. Ct. 1184, 1191–92 (2013).

Under Rule 12(b)(6), a complaint must contain "allegations plausibly suggesting (not merely consistent with)" an "entitle[ment] to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  A complaint cannot survive if it "pleads facts that are merely consistent with a defendant's liability" but "stops short of the line between possibility and plausibility of

entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[R]everse-engineered"

allegations "craftily drafted to imply that what only became clear due to subsequent events was

somehow known to [defendants] far earlier in time" do not satisfy this standard. *Panther*

*Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669–70 (S.D.N.Y. 2008), *aff'd*,

347 F. App'x 617 (2d Cir. 2009). Securities fraud claims also must specify with particularity the

circumstances constituting the alleged fraud. *See* Fed R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b).

## ARGUMENT

### I.  Plaintiff Fails to Plead an Actionable Misstatement Under Section 10(b)

#### A.  Defendants Did Not Make Any Misrepresentations Regarding AlphaSector's "Live" Historical Track Record

The cornerstone of the Complaint is the contention that Defendants marketed the

AlphaSector funds based on a "blockbuster performance record that in reality never existed."

Compl. ¶ 1. But the Complaint fails to support that theory with any actionable misrepresentation

made by *any of the Defendants*. Plaintiff apparently hopes that repetition of what was known or

said by F-Squared—the funds' sub-adviser, a completely separate entity, and a non-party to this

case—is sufficient to sustain its claims against Defendants. But Defendants are not liable for F-

Squared's alleged misrepresentations.

Specifically, Plaintiff claims that Defendants misled investors by stating in SEC filings

that the "historical track record" of the AlphaSector indices was based on investment results

reflecting "live" client assets when, in fact, it was based on hypothetical, back-tested data prior to

2008. But Defendants' filings never said this. Plaintiff cannot avoid dismissal on the basis of its

own mischaracterizations of what Defendants said. *See Palmer Kane LLC v. Scholastic Corp.*,

No. 12 Civ. 3890 (TPG), 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014) ("[T]he court

cannot accept as true the contradictory allegations in deciding a motion to dismiss—the court

must rely on the documents.").  Rather, Plaintiff must "specify each statement alleged to have

been misleading" and the "reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).

Once Plaintiff tries to specify such statements, its claim derails.

Plaintiff premises its claim on two charts included in appendices to VOT's prospectuses

and registration statements—in disclosures directed to VOT mutual fund investors, not VIP

common stock investors.  *See, e.g.*, Compl. ¶¶ 88, 91, 141–42 & Ex. A at 60–61.  The charts

compare returns for the Premium AlphaSector Index and the AlphaSector Rotation Index,

respectively, to the S&P 500 Index.  But Plaintiff cannot point to a single statement in these

charts—or anywhere else—stating that the performance was based on "live" traded assets.

Plaintiff relies entirely on the fact that a footnote to the charts states that the AlphaSector

indices each have an "Index inception date" of April 1, 2001.  *Id.*, Ex. A at 60.  Plaintiff omits

the rest of the sentence, which states that the Premium AlphaSector Index "commenced daily

calculation and dissemination by NASDAQ OMX with a base value 100.00 on January 3, 2011,"

*nearly ten years later*, and the Rotation Index commenced calculation on October 13, 2008.  *Id.*,

Ex. A at 60–61.  Plaintiff asserts conclusorily that investors would ignore the plain language and

interpret the footnote as Defendants' representation that the AlphaSector indices presented live

(as opposed to "back-tested") data all the way back to 2001.  *See* Compl. ¶ 143.  A stock index is

a mathematical construct and cannot be invested in directly.  By definition, an index is

hypothetical, has no assets, and does not trade; it does not purport to show actual investment

returns.[4]  Removing any doubt on this point, VOT itself made clear in its mutual fund

registration statements and prospectuses that the AlphaSector indices—like all indices—were

---

[4]     An index is nothing more than "an imaginary portfolio of securities representing a
particular market or a portion of it."  *See Index*, Investopedia, *available at*
www.investopedia.com/terms/i/index.asp (last visited Oct. 21, 2015).

"not available for direct investment." Compl., Ex. A at 60, 61. VOT further cautioned mutual fund investors that the "performance" of an index must be distinguished from "an actual portfolio." *Id. Cf. In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 106 (2d Cir. 2013) (holding tables listing investment costs in a prospectus were not misleading when "placed in context," and noting court was "unpersuaded by Plaintiffs' attempt to isolate and construe a single element of [defendants'] prospectuses"). Simply put, Defendants never said, as Plaintiff claims, that "from April 2001 to September 2008 the AlphaSector strategy had achieved astonishing returns approximately 480% greater than the S&P 500 index" or other similar statement. Compl. ¶ 2. Plaintiff cannot point to a single actual statement to that effect.

Finally, to the extent Plaintiff further alleges that "the hypothetical back-testing itself was materially false and misleading" due to an "erroneous calculation" *by F-Squared*, *see id.* ¶ 146, Plaintiff fails to allege that Defendants had access to the supposedly "correct" information at the time of VOT's alleged misstatements. Indeed, a May 14, 2014 *Wall Street Journal* article quoted in the Complaint, *see id.* ¶ 111, reported that F-Squared only informed its own clients that "the methodology F-Squared used to 'translate' the data signals it licensed from a third party to calculate its index values was 'systematically incorrect'" on May 9, 2014—well after any of the alleged misstatements at issue. Ex. C; *see also* Point II, *infra*.

### B.    The Complaint's Remaining Categories of Misstatements Are Inactionable

Unable to point to any actual misrepresentations by Defendants regarding the AlphaSector track record, Plaintiff has attempted to salvage its Complaint by tacking on additional categories of inactionable statements. These include puffery statements regarding "disciplined" or "rigorous" selection and monitoring of sub-advisers; generic descriptions of the AlphaSector strategy as a "dynamic," "analytical" and "proprietary" model; the reasons underlying Virtus' *accurately reported* revenues; and Defendants' inactionable opinions that the

SEC investigation would not have a "material adverse effect" on the Company. None of these statements constitute actionable misrepresentations under the securities laws.

>     1.    **Descriptions of VIP's Selection and Monitoring of Sub-Advisers and of the AlphaSector Strategy Constitute Inactionable Puffery, Opinion, and/or Allegations of Corporate Mismanagement**

Plaintiff alleges that Defendants misled the market with respect to their selection and monitoring of their sub-advisers (including F-Squared) and the quantitative aspects of the AlphaSector strategy. Yet a close look at these purported misstatements shows they are not even alleged to be false. And, at most, they are "expressions of puffery," which "do not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004):

- "We are *disciplined* in our selection of high-caliber managers," Compl. ¶¶ 155, 156 (emphasis added);

- "As a multi-manager, the identification and selection of investment managers, both affiliates and subadvisers, is *critical to the business*," *id.* ¶ 155 (emphasis added);

- "We monitor the quality of the affiliated managers and unaffiliated subadvisers products by assessing their performance, style, consistency and the discipline with which they apply their investment process," *id.* ¶¶ 157–58, 161;

- "Aylward noted that Virtus offered '[*d*]*isciplined* product oversight and development,' a '[*f*]*ocused* approach to identifying distinctive, high-quality teams,' a '[*d*]*isciplined* approach to managing performance,' and '[*r*]*igorous* monitoring of strategies' quality, consistency with investment style,'" *id.* ¶ 159 (emphasis added); *see also id* ¶¶ 160–62.

Plaintiff does not allege specific facts showing that use of words like "disciplined," "rigorous," and "focused" to describe VIP's selection of sub-advisers is inaccurate. That VIP, along with numerous other F-Squared clients, failed to discover a calculation error in F-Squared indices for periods prior to the retention of F-Squared does not make statements regarding VIP's process for the selection and oversight of F-Squared as a sub-adviser false. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 359–60 (S.D.N.Y. 2008) (holding that company's risk management program's failure to root out alleged wrongdoing did not mean that statements

regarding risk management were false when made).  But even if Plaintiff had adequately alleged the statements were false, it is challenging generalizations regarding integrity, fiscal discipline and risk management, which the Second Circuit has instructed are not actionable under Section 10(b).  *See ECA v. JPMorgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009) (statements regarding "highly disciplined risk management" and "a focus on financial discipline" are inactionable puffery); *see also Scott v. Gen. Motors Corp.*, 605 F. App'x 52, 54–55 (2d Cir. 2015) (affirming dismissal of Section 10(b) claims based on inactionable puffery about monitoring of inventory which "would help strengthen the reputation of [defendant's] brand").

Plaintiff essentially alleges that Defendants inadequately monitored F-Squared.  But alleged "instances of corporate mismanagement" are inactionable under the securities laws. *Santa Fe Indus. v. Green*, 430 U.S. 462, 477 (1977); *see also Field v. Trump*, 850 F.2d 938, 948 (2d Cir. 1988).  Where, as here, "Plaintiff's claims are . . . qualitative, focusing . . . on Plaintiff's contention that [Defendants'] business would have been conducted differently had the company adhered to the management principles disclosed in its public filings," such allegations will not survive dismissal.  *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 376–77 (S.D.N.Y. 2004).  Thus, allegations about VIP's "discipline" in selecting F-Squared do not state a claim for securities fraud.

Descriptions of the AlphaSector strategy as "dynamic," "analytical," "quantitative," and "proprietary" are likewise neither adequately alleged to be false nor actionable.  *See* Compl. ¶¶ 172–73.  The fact that F-Squared has admitted that certain of *its* advertisements emphasizing "algorithmic-based models" were misleading, *id.* ¶ 174, does not render *Defendants'* different statements misleading.  Plaintiff alleges only that the SEC found, in its settlement with F-Squared, that from April 2001 through June 2008—*years* before the alleged misstatements—the

model was based on "moving averages," which Plaintiff says is not "dynamic" or "analytical" enough. *Id.* These allegations do not in any way contradict Defendants' statements about the strategy as it existed *in 2013 and 2014* when the statements were made. In any event, Defendants' statements touting a "dynamic" investment strategy do not purport to represent specific facts about that strategy; they merely express inactionable "puffery and corporate optimism." *Rombach*, 355 F.3d at 174.

If the foregoing statements are characterized as opinions rather than puffery, Plaintiff's claims still fail: Opinion statements are actionable *only* if both "objectively false and disbelieved by the defendant at the time [they were] expressed." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 289–90 (S.D.N.Y. 2011). In other words, for opinion statements, "the falsity and scienter requirements are essentially identical." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004). Yet Plaintiff utterly fails to plead a fraudulent inference of scienter with respect to its claims. *See infra* Point II.

### 2.    Plaintiff Does Not Allege Defendants Misstated Revenue

In the Complaint's headings, Plaintiff says Defendants made false and misleading statements regarding VIP's revenue. But again, once the Complaint moves from headlines to specifics, nothing is there. The Complaint nowhere alleges that VIP's revenue was misreported during the Class Period. Instead, Plaintiff seeks to hold Defendants liable for not disclosing that "the cause of its steadily rising revenues" was the purported misstatements about the AlphaSector track record. Compl. ¶¶ 165–71. Yet, an "allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose Section 10(b) liability." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 470 (S.D.N.Y. 2006). Therefore, Plaintiff's allegations that Defendants made

13

"misleading statements about the sources of [the Company's] revenue" are insufficient to state a claim. *Id.*; *see also In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 511 (S.D.N.Y. 2009) ("[A]lthough Plaintiffs allege that statements regarding the sources of the Company's revenue are false and misleading, they do not allege that Defendants falsely reported structured finance revenue.  As such, Plaintiffs have not alleged a violation of federal securities laws.").

### 3.    Defendants Had No Duty to Disclose A Potential SEC Investigation

Plaintiff's final category of alleged misstatements consists of statements in VIP's Form 10-Ks and 10-Qs that the "outcomes of its legal or regulatory matters are not likely . . . to have a material adverse effect on its consolidated financial condition."  Compl. ¶¶ 175–76.  Plaintiff's inclusion of this alleged "misstatement" is a transparent attempt to prolong the Class Period even past commencement of this action, to May 11, 2015—the date VIP announced it was under investigation by the SEC.  *See id.* ¶ 132.

Plaintiff fails to allege that Defendants' statement of *opinion* regarding the likely effect of future litigation or regulatory matters was objectively false or subjectively disbelieved when made.  *See Fait*, 655 F.3d at 110.  Plaintiff's conclusory allegations fail to specify facts suggesting that, at the time the statements were made, prospective litigation or regulatory action was likely to have a material impact on VIP's financial results (or even that the impact is likely to be material as of today).  The challenged prediction of the outcome of an litigation or investigation is a forward-looking statement protected by the PSLRA's safe harbor.  *In re GlaxoSmithkline PLC Sec. Litig.*, No. 05 CIV. 3751 (LAP), 2006 WL 2871968, at *10 (S.D.N.Y. Oct. 6, 2006) (optimistic statement about strength of legal position "is a classic example of a forward-looking statement and is clearly protected as such").

Corporations have no duty to predict potential exposure to future litigation, including litigation that may arise from ongoing governmental investigations, unless it is "substantially

14

certain to occur." *Citigroup*, 330 F. Supp. 2d 367 at 377; *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  Nor do the federal securities laws "impose a duty to disclose uncharged, unadjudicated wrongdoing." *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991).  Although no Virtus entity has received an SEC Wells Notice, even receipt of a Wells Notice does not require disclosure because "[a]n investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges." *Richman v. Goldman Sachs Group*, 868 F. Supp. 2d 261, 272–75 (S.D.N.Y. 2012).  As such, Plaintiff's claims with respect to Defendants' alleged failure to disclose an SEC investigation—or a less optimistic prediction about this litigation—fail.

      **C.**    **Under *Janus*, Plaintiff's Claims Against VIP and Messrs. Angerthal, Cerutti and Waltman Fail as a Matter of Law as to Statements They Did Not Make**

In a case involving analogous facts, the Supreme Court held that, under Section 10(b), the "maker" of a statement is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).  Specifically, the Supreme Court held that statements made in a mutual fund prospectus were not "made" by the fund's investment adviser.  The Supreme Court reasoned that the mutual fund—which alone "bears the statutory obligation to file the prospectuses with the SEC"—was the sole maker of the alleged misstatements. *Id.* at 2304; *cf.* Compl. ¶ 29 (alleging that VOT filed the prospectuses for the funds).  The same reasoning applies here:  Statements made in VOT's prospectus were not made by VIP, and VIP is not liable for them.

As in *Janus*, the Complaint does not—and cannot—plead that VIP was the entity "with ultimate authority" over the VOT offering materials.  The most Plaintiff alleges is that a VOT

mutual fund prospectus "is branded with the VIP logo on the first page." Compl. ¶ 7; *see also id.*

¶ 91.  Cases applying *Janus* hold that the mere inclusion of a defendant entity on the cover page

of a prospectus is not sufficient to establish that the defendant "made" the statements therein.

*See In re Optimal U.S. Litig.*, No. 10 CIV 4095 SAS, 2011 WL 4908745, at *6 (S.D.N.Y. Oct.

14, 2011) ("[D]esignation of [the defendant] on the cover page [of an offering memorandum] is .

. . insufficient to establish liability under *Janus*.").  In fact, the *Janus* district court specifically

held that the appearance of an investment advisor's name and logo on the face of mutual fund

prospectuses did not make the advisor liable to the mutual fund's shareholders for

misrepresentations made in the prospectuses.  *See In re Mut. Funds Inv. Litig.*, 487 F. Supp. 2d

618, 621 (D. Md. 2007), *rev'd on other grounds*, *In re Mut. Funds Inv. Litig.*, 566 F.3d 111 (4th

Cir. 2009), *rev'd sub nom. Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296

(2011).  The Supreme Court did not disturb this holding.  Accordingly, the Court should dismiss

all claims against VIP that are based solely on statements in VOT's offering materials.  *See*

Compl. ¶¶ 14, 56, 58, 66–67, 88–89, 91, 104, 141–142,153–54, 172–73.[5]

        The Section 10(b) claims against each of Messrs. Angerthal, Cerutti and Waltman

likewise fail with respect to all alleged misstatements for which each defendant was not the

speaker.  The Complaint does not allege that Messrs. Cerutti and Waltman made *any* of the

purported misstatements during the Class Period.  *See In re Smith Barney Transfer Agent Litig.*,

884 F. Supp. 2d 152, 164 (S.D.N.Y. 2012) ("[I]ndividuals who do not 'make' statements cannot

be liable solely on account of their close relationship with the 'maker.'") (Pauley, J.); *In re UBS*

*AG Sec. Litig.*, No. 07 Civ. 11225 RJS, 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012)

---

[5]        For the same reason, the Court should dismiss all claims against VOT based solely on
statements in VIP's SEC filings, earnings calls, and investor presentations.  *See id.* ¶¶ 9, 21, 63–
64, 95–96, 115, 130–31, 155–62, 165, 167–68, 170, 175.

("[T]he individual defendants still must have actually 'made' the statements under the new *Janus* standard to be held liable."), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).  In addition, the Section 10(b) claims against Mr. Angerthal should be dismissed as to all statements other than those he himself "made"—that is, statements attributed to him.  *See Janus*, 131 S. Ct. at 2302; Compl. ¶¶ 167, 175.

## II.     The Complaint Fails to Plead a Strong Inference of Scienter

Under Rule 9(b) and the PSLRA, Plaintiff bears the burden of "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. § 78u-4(b)(1)–(2)). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  "In reaching its conclusion, the Court must consider plausible, nonculpable explanations for the defendant's conduct." *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 406 (S.D.N.Y. 2013).  If a fraudulent inference is not "at least as compelling" as a nonfraudulent one, it must be rejected, even in "a close case." *Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010).

To establish scienter, Plaintiff must allege facts (a) showing defendants possessed motive and opportunity to perpetrate fraud or (b) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *ATSI Commc'ns v. Shaar Fund, Ltd*, 493 F.3d 87, 99 (2d Cir. 2007).  It does neither.

### A.      Plaintiff Does Not Allege a Fraudulent Motive

Plaintiff utterly fails to plausibly allege any of the Individual Defendants received any "concrete and personal benefit" from the alleged fraud. *Kalnit v. Eichler*, 264 F.3d 131, 139–40 (2d Cir. 2001).  Thus, the Complaint fails to satisfy the "motive and opportunity" prong of the

scienter standard.  While Plaintiff alleges that certain stock transactions by Messrs. Waltman and

Cerutti[6] were improper, *see* Compl. ¶¶ 107–110, the circumstances of those "sales" are neither

"suspicious" nor unusual," as required to support a strong inference of scienter.  *See, e.g.*, *Taylor*

*City Gen. Empls. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 798–99 (S.D.N.Y. 2013).

First, the publicly filed Form 4s that the Complaint plainly relies on in alleging insider

sales disclose that all of Mr. Cerutti's transactions, and the vast majority of Mr. Waltman's, were

made to satisfy tax withholding obligations associated with the vesting of previously awarded

restricted stock units ("RSUs") at predetermined times, with proceeds sent to the IRS.  *Compare*

Compl. ¶¶ 108, 110 *with* Exs. E–H (Form 4s).[7]  A "consistent pattern of trading undertaken

primarily to make payments required for the exercise of stock options or to pay taxes" does not

support a strong inference of scienter.  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d

549, 561 (S.D.N.Y. 2004).  Each of these transactions is identified on the associated Form 4 as

type "F"—"payment of exercise price or tax liability by delivering or withholding securities

incident to the receipt, exercise or vesting of a security."  Ex. I (Form 4 Instructions) at 6.

On December 16 and 17, 2013, Mr. Waltman also allegedly sold 3,000 shares of VIP

stock, after which he still retained 25,000 VIP shares.  Compl. ¶ 110;  Ex. J (Form 4).  Thus, the

December 2013 sales represented 10.7% of his pre-sale holdings.  A sale of such a modest

portion of stock holdings is "not suspicious when considered in context of his overall holdings of

[Company] stock."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 586 n.23 (S.D.N.Y. 2014)

(collecting authorities holding sale percentages ranging from 9.9 to 17.4 not suspicious), *aff'd*,

---

[6]     As detailed above, Messrs. Waltman and Cerutti are not even alleged to be the "maker"
of any misstatements in the Complaint.  They are included as defendants apparently so Plaintiff
would have something to say regarding the motive prong of the scienter analysis.

[7]     The Complaint erroneously lists one of Mr. Cerutti's withholdings as a March 14, 2013—
not March 14, 2014—transaction.  *See* Compl. ¶ 108; Ex. F.

604 F. App'x 62 (2d Cir. 2015).

Second, Plaintiff does not even attempt to connect the timing of any stock sales to any allegedly misleading disclosure. *Taylor City*, 967 F. Supp. 2d at 799. Not one of the transactions highlighted in the Complaint was made at a "suspicious" time—which is unsurprising, since most were triggered by the vesting of RSUs and not initiated by Messrs. Cerutti or Waltman. The dates of the transactions—March, June and December 2013 and March 2014—are completely untethered to Plaintiff's fraud allegations. There is not a single allegation that a defendant sold shortly after the supposedly "bombshell" meeting in Boca Raton in December 2012. *See* Compl. ¶¶ 79–85. Or after learning, in late September or early October 2013, that the SEC was investigating F-Squared, VIP's sub-adviser. *See* Compl. ¶ 101. Plaintiff acknowledges that the supposed "sales" by Messrs. Waltman and Cerutti occurred "a few months" *after* each of these events, *id.* ¶ 108, and long before the end of the Class Period. *Cf. City of Brockton Ret. Sys. v. Shaw Grp.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) ("10-plus week gap between the defendants' sales" and end of Class Period "is not strongly suspicious").

The lack of allegations of insider sales by any other VIP insider further negates the assertion that Messrs. Waltman and Cerutti's transactions were suspicious. *See San Leandro Emergency Med. Plan v. Phillip Morris Cos.*, 75 F.3d 801, 814 (2d Cir. 1996).

**B.    The Complaint Does Not Plead Facts Supporting a Compelling Inference of Conscious Misbehavior or Recklessness**

Because Plaintiff fails to plead a fraudulent motive, its allegations regarding conscious misbehavior or recklessness must be "correspondingly greater." *Kalnit v. Eichner*, 264 F.3d at 142. Plaintiff wholly fails to satisfy this alternative scienter basis, which requires at least "conscious recklessness—*i.e.*, a state of mind approximating ***actual intent***, and not merely a heightened form of negligence." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir.

2015) (emphasis added).  When evaluated as a whole (as *Tellabs* requires), Plaintiff's allegations merely attempt to recast innocent facts in a nefarious light.

        1.        **The Boca Raton Conference**

The Complaint touts as its "bombshell" allegation a December 14, 2012 wholesalers' conference in Boca Raton at which some Defendants supposedly learned that "the AlphaSector funds' past performance record . . . was fabricated."  Compl. ¶ 79.  Even if accepted as true on this motion, Plaintiff's allegations regarding the Boca conference do not support any inference of fraudulent intent, let alone one strong enough to pass muster under the PSLRA.  Plaintiff alleges only that Peter Batchelar, of Virtus Product Management, stated to a room full of wholesalers, with certain Defendants present, that historical information presented by F-Squared's CEO about the AlphaSector strategy's performance was "based not on actual client assets but on the backtesting of hypothetical assets."  *Id.* ¶ 81.  In other words, Plaintiff implausibly alleges that Defendants' fraudulent intent can be inferred from an employee openly telling *the truth* to a large group of people responsible for marketing AlphaSector funds to customers.  At most, Plaintiff's allegation indicates that Defendants took swift and appropriate action to correct a statement by Howard Present of F-Squared to the extent Present's comments could be interpreted to mean AlphaSector had a live track record dating back to 2001.  *Id.* ¶¶ 80–81.  Plaintiff's allegations are completely inconsistent with fraudulent intent.  They are, however, completely consistent with the reality detailed in Point I above:  No statements attributable to Defendants *ever* represented to investors that the AlphaSector Index was based on live data for the 2001 to 2008 time period. *See supra* Point I.A.

Moreover, Plaintiff's sole purported source for the allegations regarding the Boca conference is one confidential witness, identified only as a former wholesaler who was employed

by Virtus during the Class Period.[8]  *E.g.*, Compl. ¶¶ 7, 79.  Information from such anonymous

sources "must be discounted."  *See, e.g.*, *In re MRU Holdings Secs. Litig.*, 769 F. Supp. 2d 500,

516–17 (S.D.N.Y. 2011) ("[I]t is hard to see how information from anonymous sources could be

deemed compelling or how [a court] could take account of plausible opposing inferences.

Perhaps these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they

don't even exist." (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756–57 (7th Cir.

2007))).  One confidential witness's impression that unspecified "[m]embers of Virtus's senior

management" were "stone-faced" in response to Mr. Batchelar's remarks, Compl. ¶ 82, does not

support a cogent inference of deliberate wrongdoing by anyone.  Wholly absent from the

Complaint is any allegation that the wholesaler possessed "personal knowledge of

[management's] opinions" regarding the AlphaSector strategy.  *Campo v. Sears Holding Corp.*,

371 F. App'x 212, 217 n.4 (2d Cir. 2010) ("The anonymity of the sources of plaintiffs' factual

allegations concerning scienter frustrates the requirement, announced in *Tellabs*, that a court

weigh competing inferences to determine whether a complaint gives rise to an inference of

scienter that is 'cogent and at least as compelling as any opposing inference of nonfraudulent

intent.'").  Nor is there a single allegation that the wholesaler was in any way involved in the

Company's due diligence regarding F-Squared or the AlphaSector strategy.  As such, allegations

attributed to him should be disregarded.

   Finally, even if this Court were to credit a single confidential witness's dubious

allegations regarding the Boca conference, such allegations do not support a finding of scienter

---

[8]  Plaintiff's additional allegation—that its counsel "spoke to" a reporter who published a
February 9, 2015 article mentioning the Boca conference and purportedly "confirmed the
accuracy" of his original article based on his own unidentified sources—is triple hearsay and, in
any event, not pled with particularity.  *See* Compl. ¶ 83.  And in all likelihood, the reporter's
unidentified source is the same as Plaintiff's.  The Court should therefore disregard it.

against Messrs. Aylward or Angerthal.  Plaintiff does not allege that Mr. Aylward was even at

the conference; instead, the Complaint alleges that Mr. Aylward attended via telephone.  Plaintiff

does not allege a single fact to support the confidential witness's assumption that Mr. Aylward

did, in fact, hear Mr. Batchelar's purportedly "bombshell" remarks.  *Id.* ¶ 79.  Nor does Plaintiff

allege that Mr. Angerthal attended or was otherwise privy to the information discussed in Boca.

### 2. The September or October 2013 Due Diligence Meeting with Present

Plaintiff's second key scienter allegation—characterized as a "game changer" due

diligence meeting in Chicago in September or October 2013 in which F-Squared's Howard

Present informed "thirty internal Virtus advisors" that the SEC was investigating F-Squared—is

equally deficient.  Compl. ¶ 101.  Plaintiff's only source is the same unidentified former

wholesaler, but this time, Plaintiff concedes this unnamed individual "did not personally attend

the meeting" and merely "heard from persons who did" that Mr. Cerutti (but no other Individual

Defendant) was in attendance.  *Id.*  Plaintiff does not provide names or titles of the other

"persons" who attended the meeting.  The allegations therefore utterly fail to "describe[]" the

sources "with sufficient particularity to support the probability that a person in the position

occupied by the source would possess the information alleged."  *Novak*, 216 F.3d at 314; *see*

*also Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 996–98 (9th Cir. 2009) (discounting

confidential witnesses that "report only unreliable hearsay" from anonymous employees).  Given

this game of telephone, it is no surprise that the Complaint does not even allege what, exactly,

Mr. Present said at the meeting; only that it was "a game changer."  Compl. ¶ 101.

Plaintiff relies on these vague, unspecified allegations regarding the due diligence

meeting to imply, without actually alleging, that Defendants then convened a conference call to

instruct employees to destroy documents.  As with the Boca allegations, these allegations,

considered as a whole, are simply implausible.  Plaintiff relies again on the same unnamed

wholesaler, who states that unspecified members of "management" instructed employees to

"destroy 'any materials they had' relating to AlphaSector's prior track record."  Compl. ¶ 102.

But as the Complaint itself repeatedly emphasizes, what Plaintiff calls the "track record" was

previously published in public prospectuses and registration statements *filed with the SEC*.  *See,*

*e.g.*, Compl. ¶¶ 56–59.  By definition, Virtus's marketing materials would have been distributed

to clients.  And as a regulated entity, Virtus files copies of all of its marketing materials with

FINRA.  The most the Complaint plausibly alleges, then, is that after F-Squared withdrew

information regarding the AlphaSector index from its advertising material, Defendants instructed

Virtus salespeople to ensure they no longer used marketing materials containing information F-

Squared had withdrawn.  The most "cogent" and "compelling" inference to be drawn here,

*Tellabs*, 551 U.S. at 310, is that Defendants wanted to prevent potential mutual fund investors

from receiving outdated material.  Indeed, this inference is supported by a *Wall Street Journal*

report that Plaintiff itself relies on:

> In October [2013], F-Squared had alerted clients that the Securities and Exchange
> Commission was investigating whether the firm properly disclosed its historical
> performance to investors. At the time, the firm told clients to "discard all previous
> material and use only the new information going forward."

Ex. C, *cited in* Compl. ¶ 111.[9]

### C.   Other Alleged Circumstantial Evidence Regarding the Individual Defendants Does Not Support Scienter

Plaintiff's remaining allegations regarding the Individual Defendants likewise fail to

plead a strong inference of scienter.  First, Plaintiff points to Mr. Cerutti's resignation from the

---

[9]      Plaintiff alleges that this unnamed wholesaler—and certain other unnamed
acquaintances—deleted emails or electronic documents.  Nowhere does the Complaint allege
that management instructed employees to do so.  *Cf.* Compl. ¶ 103 (alleging only that "many"
employees, otherwise unidentified, "complied by deleting emails, PDFs, discarding hard copy
documents, and advertising materials").

Company in 2014 as evidence of fraudulent intent.  However, "resignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011); *see also In re Molycorp. Inc. Sec. Litig.*, No. 13 Civ. 5697 (PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) ("[W]ithout factual allegations linking Defendants' resignations to the alleged fraud, the mere fact of the resignations provides no support for a finding of scienter.").  Plaintiff's conclusory characterization of the resignation as "abrupt" and contention that Mr. Cerutti forfeited stock and equity awards fail to create any inference of fraudulent intent on Mr. Cerutti's part.  As VIP's Form 8-K explained at the time, Mr. Cerutti resigned "to accept a position with another asset manager," Ex. K, having been named CEO of AMG Funds, Ex. L (AMG Press Release).[10]

## III.    Plaintiff Does Not Plead an Actionable Control Person Claim Under Section 20(a)

To state a claim under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Trust Fund v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).  Plaintiff's Section 20(a) claims against the Individual Defendants fail to meet these elements.  First, as argued above, there is no viable predicate violation of Section 10(b).  *See ATSI*, 493 F.3d at 108.

Second, the Complaint fails to adequately allege "culpable participation" by any Individual Defendant in any supposed fraud by VIP or VOT.  "[A] plaintiff must allege 'culpable

---

[10]      It is likewise insufficient to allege that, by virtue of the Individual Defendants' high-level positions, they "ought to have known" that their statements were false and misleading. *Lululemon*, 14 F. Supp. 3d at 574.  Plaintiff must allege "specific facts establishing that defendants knew their public statements were inaccurate or failed to check information they had a duty to monitor."  *Local No. 38 Intern. Broth. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 459 (S.D.N.Y. 2010).

participation' and plead that element with particularity." *In re NQ Mobile, Inc. Sec. Litig.*, No. 13CV7608, 2015 WL 1501461, at *4 (S.D.N.Y. Mar. 27, 2015) (Pauley, J.).  This requires, "at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006).  For the same reasons Plaintiff fails to allege scienter, the Complaint also falls well short of particularizing any of the Individual Defendants' "culpable participation."  *See supra* Point II.B.

Third, Plaintiff nowhere alleges that either Messrs. Cerutti and Waltman exercised "actual control."  An alleged control person must "not only have actual control over the primary violator, but have actual control over the *transaction* in question." *Floyd v. Liechtung*, 10 Civ. 4254(PAC), 2013 WL 1195114, at *6 (S.D.N.Y. March 25, 2013) (emphasis added).  Plaintiff fails to plead any specific facts that Messrs. Cerutti and Waltman exercised *actual* control over any of the alleged wrongdoing.  As discussed above, neither was the "maker" of a single alleged misstatement.  *See, e.g.*, *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) ("[O]fficer or director status alone does not constitute control for the purposes of Section 20(a) liability.").

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.[11]

Dated: October 21, 2015
New York, New York

   /s/ Joseph M. McLaughlin
Joseph M. McLaughlin
Daniel J. Stujenske
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel.: 212-455-2000
Fax: 212-455-2502

*Attorneys for Defendants*

---

[11] The Court's practices required Defendants to submit a pre-motion letter outlining the arguments herein, to afford Plaintiff an opportunity to amend its Complaint before judicial resources are expended resolving this motion.  Plaintiff elected not to amend, and therefore, this motion should be granted with prejudice.