UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                        :
                                        :        15cv1249
In re VIRTUS INVESTMENT PARTNERS, INC.  :
Securities Litigation                   :        <u>OPINION & ORDER</u>
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

   Lead Plaintiff the Arkansas Teacher Retirement System brings this securities class

action on behalf of itself and others who purchased the publicly traded securities of Defendant

Virtus Investment Partners ("Virtus Partners") between January 25, 2013 and May 11, 2015.

Lead Plaintiff moves to certify a class. For the reasons that follow, Lead Plaintiff's motion is

granted.

<u>BACKGROUND</u>

   The allegations of the Amended Complaint ("Complaint") are accepted as true for

the purpose of this motion for class certification.[1] In brief, Lead Plaintiff alleges that, in 2009,

Virtus Partners began marketing a family of funds called "AlphaSector." (Compl. ¶¶ 4–5.) In

marketing materials, Defendants represented that the outsized performance of the AlphaSector

indices had been achieved through live trading with real client assets beginning in 2001.

(Compl. ¶ 6.) But, in fact, the AlphaSector indices did not come into existence until 2008.

(Compl. ¶ 50.) Then, in a January 2013 conference call, President and Chief Executive Officer

George R. Aylward stated that "[o]ur portfolio managers continued to deliver strong relative

investment performance, and this performance has been a key driver of our high level sales and

---

[1]   Familiarity with this Court's Opinion & Order dated July 1, 2016 is presumed. <u>See</u> <u>In re Virtus Inv.</u>
<u>Partners, Inc. Sec. Litig.</u>, 195 F. Supp. 3d 528 (S.D.N.Y. 2016).

1

net flows." (Compl. ¶ 165.) In his remarks, Aylward neglected to state that at least a portion of that performance was attributable to the misleading statements in the AlphaSector indices.

<u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 23 governs class certification and "does not set forth a mere pleading standard." <u>Wal–Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011). Rather, "[t]he party seeking class certification must affirmatively demonstrate compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." <u>In re Am. Int'l Grp., Inc. Sec. Litig.</u>, 689 F.3d 229, 237–38 (2d Cir. 2012) (internal quotation marks and alterations omitted).

The moving party must first satisfy Rule 23(a), which "requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class." <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(a)). In addition, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." <u>Wal-Mart</u>, 131 S.Ct. at 2548. Plaintiffs here rely on Rule 23(b)(3), which "requires the party seeking certification to show that 'questions of law or fact common to class members predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation." <u>Myers</u>, 624 F.3d at 547 (quoting Fed. R. Civ. P. 23(b)(3)).

"Generally, claims alleging violations of Section[ ] 10(b) . . . of the Exchange Act are especially amenable to class certification," <u>In re Smith Barney Transfer Agent Litig.</u>, 290 F.R.D. 42, 45 (S.D.N.Y. 2013) (internal quotation marks omitted). And, "[i]n light of the importance of the class action device in securities fraud suits, these factors are to be construed

liberally." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903

F.2d 176, 179 (2d Cir. 1990).

DISCUSSION

Lead Plaintiff moves to certify a class of investors in Virtus Partners common

stock harmed by Virtus's misstatements.  Specifically, the proposed class consists of:

> all persons and entities that, during the period between January 25, 2013 and May
> 11, 2015, inclusive (the "Class Period"), who purchased or otherwise acquired
> shares of the publicly traded common stock of Virtus Investment Partners, Inc. and
> were damaged thereby (the "Class").

(Mem. In Support of Motion to Certify Class, ECF No. 80, at 3.)

Defendants oppose class certification and argue that (1) Lead Plaintiff fails to

allege that common questions predominate because it does not allege class-wide reliance, (2)

Lead Plaintiff's trading history makes it an unsuitable representative, and (3) in any event, if

certification is granted the class period should be shortened.

## I.       **Rule 23(a) Requirements**

### a.   Numerosity

Plaintiff must show that the proposed "class is so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'Impracticable' simply means difficult or

inconvenient, not impossible."  In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303,

307 (S.D.N.Y. 2004) (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)).  In the

Second Circuit, "numerosity is presumed at a level of 40 members."  Consol. Rail Corp. v. Town

of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Here, several hundred million shares of Virtus

stock were traded on the NASDAQ during the class period, with daily trading volumes averaging

approximately sixty-five thousand shares.  (See Expert Report of Chad Coffman ("Coffman

Rep."), ECF No. 81, Ex. D, ¶¶ 23–24.)  Not only is the proposed class likely comprised of

thousands of geographically dispersed parties, making joinder impractical, Defendants do not argue that the proposed class fails to satisfy this requirement. Accordingly, the proposed class satisfies the numerosity requirement.

      b.  <u>Commonality</u>

Rule 23(a)(2)'s commonality requirement is met when "plaintiffs' grievances share a common question of law or of fact." <u>Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.</u>, 504 F.3d 229, 245 (2d Cir. 2007). Courts in this Circuit find commonality satisfied where there are common issues relating to violations of federal securities laws, misrepresentations of material fact, scienter, and damages. <u>See</u> <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 245 F.R.D. 147, 158 (S.D.N.Y. 2007), <u>order aff'd in part, vacated in part</u>, 574 F.3d 29 (2d Cir. 2009).

Here, the Complaint alleges that Defendants made misrepresentations and omissions about the performance history of Virtus Partner's AlphaSector funds. This raises common questions as to whether Defendants violated the Exchange Act, whether the prospectuses disseminated to the class misrepresented facts about the funds' performance history, whether Defendants acted knowingly or recklessly, and whether investors suffered damages as a result of the alleged misrepresentations. Indeed, Defendants do not contend that the proposed class lacks a common question of law or fact. Accordingly, the proposed class satisfies the commonality requirement.

      c.  <u>Typicality and Adequacy: Unique Defenses Based on Trading History</u>

The typicality requirement overlaps with that of commonality. <u>See</u> <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 375 (2d Cir. 1997). "Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability.'" <u>Cent. States</u>, 504 F.3d at 245 (quoting <u>Robinson v. Metro–</u>

<u>North Commuter R.R. Co.</u>, 267 F.3d 147, 155 (2d Cir. 2001)). However, typicality may fail

where named plaintiffs will be forced to "expend considerable time on unique defenses—

precisely the situation the case law does not condone." <u>George v. China Auto. Sys., Inc.</u>, No. 11-

CV-7533 (KBF), 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013).

      Defendants contend that Lead Plaintiff is neither typical of the class nor an

adequate representative because its claims are subject to unique defenses based on its trading

history. First, Defendants argue that Lead Plaintiff was an "in-and-out" trader.[2] Specifically,

Defendants note that Lead Plaintiff engaged in significant in-and-out trading during the class

period and ultimately sold all of its Virtus shares prior to the end of the class period in May

2015, when the truth was purportedly fully revealed. (Declaration of Shannon McGovern

("McGovern Decl."), ECF No. 89, Ex. G.) But buying and selling shares throughout the class

period is "not atypical in a class that contains . . . numerous sophisticated investors." <u>In re</u>

<u>Petrobras Sec. Litig.</u>, 312 F.R.D. 354, 360 (S.D.N.Y. 2016). And even though Lead Plaintiff did

not hold its shares through the entire class period, it held over thirty thousand shares through the

first corrective disclosure, which subjects it to the same wrongful acts as the remainder of the

class. <u>See</u> <u>In re Petrobras Sec. Litig.</u>, 312 F.R.D. 354, 360 (S.D.N.Y. 2016).[3]

      Defendants also argue that Lead Plaintiff is atypical because it continued to

purchase Virtus stock after the truth was revealed. In particular, Lead Plaintiff purchased

additional shares of Virtus stock just weeks after news of the SEC's Wells Notice in September

---

[2]     "In-and-out traders are those who both purchase and sell all of their shares prior to a corrective disclosure;
if the purchaser sells shares quickly before the relevant truth begins to leak out, the misrepresentation will not have
led to any loss." <u>Sklar v. Amarin Corp. PLC</u>, No. 13-CV-06663, 2014 WL 3748248, at *9 (D.N.J. July 29, 2014).
[3]     In <u>Petrobras</u>, the court noted that "variations are not relevant when the same alleged misconduct drives the
claims . . . . The defendants allegedly committed the same wrongful acts in the same manner against all members of
the class by participating in a bribery and kickback scheme and making false and misleading statements that
impacted all members of the Exchange Act Class." 312 F.R.D. at 360.

2014.  (McGovern Decl., Ex. G.)  That Wells Notice caused the "biggest one-day drop" for

Virtus stock in three years.  (Declaration of John Browne ("Browne Decl."), ECF No. 95, Ex. D.)

But even though Lead Plaintiff's final purchase of Virtus stock occurred just 16 days after news

of F-Squared's Wells Notice, that purchase preceded the time in May 2015 when the truth was

fully revealed to the market.  (See Compl. ¶ 132.)  In September 2014, the market was not alerted

to how much the truth would affect Virtus Partners' stock price.  Indeed, the analyst covering

Virtus Partners reported that the errors were only in F-Squared materials, not those of Virtus

Partners.  (Browne Decl., ECF No. 95, Ex. E.)  And, in any event, other courts have questioned

the impact of post-disclosure purchases on earlier reliance.  See In re Petrobras, 312 F.R.D. at

360 (noting "the irrelevance of post-disclosure purchases to earlier reliance" in finding that such

purchases "do not mean [defendant] will face atypical defenses").  Ultimately, the proposed class

satisfies the typicality and adequacy requirements.

II.     **Rule 23(b)(3) Requirements**

a.   Predominance: Class-Wide Reliance

"[T]he predominance requirement is met if the plaintiff can establish that the

issues in the class action that are subject to generalized proof, and thus applicable to the class as

a whole, . . . predominate over those issues that are subject only to individualized proof."  Brown

v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010).  This inquiry "often turns on the element of reliance."

Erica P. John Fund, Inc. v. Halliburton Co. ("Halliburton I"), 563 U.S. 804, 810 (2011).

Plaintiffs contend that predominance is established through class-wide reliance

under either a fraud-on-the-market theory, Basic Inc. v. Levinson, 485 U.S. 224 (1988), or

presumed due to Defendants' non-disclosures, Affiliated Ute Citizens of Utah v. United States,

406 U.S. 128 (1972).

*i. Fraud-on-the Market Theory*

To invoke the fraud-on-the-market presumption of reliance articulated in <u>Basic</u>, Lead Plaintiff must establish that the alleged misrepresentations were public, that the stock traded on an efficient market, and that the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed. <u>Halliburton I</u>, 563 U.S. at 811. Here, the class qualifies for the <u>Basic</u> presumption of reliance. The alleged misstatements were contained in publicly filed prospectuses and public statements to investors. (<u>See</u> Compl. ¶¶ 132–54, 165–71, 177.) The class period is defined to end when the truth was revealed. And Virtus Partners' common stock traded on an efficient market. (<u>See</u> Coffman Rep., ¶¶ 6, 78.)

Conceding that Virtus Partners' stock traded on an efficient market, Defendants seek to rebut the presumption of class-wide reliance. A defendant may rebut the presumption "through evidence that an alleged misrepresentation did not actually affect the market price of the stock." <u>Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")</u>, 134 S. Ct. 2398, 2417 (2014); <u>Basic</u>, 485 U.S. at 248 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."). "Defendants must demonstrate a lack of price impact by a preponderance of the evidence." <u>In re Goldman Sachs Grp., Inc. Sec. Litig.</u>, No. 10-CV-3461 (PAC), 2015 WL 5613150, at *4 (S.D.N.Y. Sept. 24, 2015), <u>leave to appeal granted</u>, No. 15-3179 (2d Cir. Jan. 26, 2016).

Courts frequently consider "event study" data in determining price impact. "To prove that a stock was responding to a specific piece of information on a specific day under the generally accepted event study approach (1) the return must be abnormal; (2) the abnormal return must be significant; and (3) there must not be confounding news." <u>In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.</u>, 250 F.R.D. 137, 143 (S.D.N.Y. 2008). A

defendant may rebut the presumption with evidence that the alleged misstatements were not associated with abnormal, positive stock-price returns ("front-end price impact") or negative price stock-returns ("back-end impact").

Because the back-tested information was contained in registration statements that pre-date the class period, Lead Plaintiff advances a price-maintenance theory, focusing on back-end impact. Back-end price impact asks whether a decline in stock price when the truth is revealed demonstrates that the misstatements maintained an artificially high price.

The Complaint alleges that the truth was revealed through multiple, partial disclosures: (1) in September 2014, when F-Squared received a Wells Notice from the SEC, (2) in November 2014, when Howard Present resigned from F-Squared, and (3) in May 2015, when Virtus Partners disclosed that the SEC was investigating Virtus Advisers regarding F-Squared's historic performance information. (Compl. ¶¶ 112–14, 116, 117–19, 132–34.) Defendants contend that these disclosures could not have impacted Virtus Partners' share price because the truth about back-testing was already revealed. Specifically, Defendants point to three articles in December 2013 (*FundFire*, *Barron's,* and *Wall Street Journal* reported "the historic performance data relied upon backtested results") and one article in May 2014 (*Wall Street Journal* reported F-Squared "misrepresented that its strategy tracked real money").[4] Defendants' expert concluded that there was no statistically significant abnormal negative return on the days these articles were published. (See Expert Report of Chad Coffman, ECF No. 89, Ex. I, ¶¶ 31–35.)

But Defendants' argument is essentially a "truth-on-the-market defense," which is inappropriate on a motion for class certification. Rebutting "'the [fraud-on-the-market]

---

[4] In Youngers v. Virtus Inv. Partners Inc., 195 F. Supp. 3d 499, 521 (S.D.N.Y. 2016), this Court held that such disclosures were sufficient to trigger an investor in the AlphaSector funds to investigate, thereby beginning the statute of limitations. That is separate from the issue of whether an investor in Virtus stock would have known the whole truth based on the same article.

presumption of reliance' . . . by demonstrating that 'news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements' . . . is a matter for trial (and presumably also for a summary judgment motion. . .)." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1204 (2013) (quoting Basic, 486 U.S. at 248–49); In re Goldman, 2015 WL 5613150, at *6 ("Defendants' demonstration of 34 separate dates . . . , which allegedly revealed that Goldman had acted against clients' interest and on which there was no movement in Goldman's stock price, does not show a lack of price impact. This is because the argument is an inappropriate 'truth on the market' defense."). Thus, Defendants' argument lacks merit at this stage.

Defendants also assert that the drops in share price on the dates proffered by Lead Plaintiffs have alternative explanations. For instance, Howard Present's resignation creates uncertainty for investors, and the May 2015 10-Q contained negative financials for the company. (Choi Rpt., ECF No. 88, ¶ 41.) These drops, their argument continues, simply reflect market reaction to "new industry-specific or firm specific facts, conditions, or other events," as opposed to "truth behind the alleged misstatements." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 40 (2d Cir. 2009).

However, Defendants' theory is undermined by evidence that investors were still in the dark throughout the class period. First, it is not clear that the December 2013 and May 2014 articles revealed the truth to Virtus Partners investors. Those news articles focused on an SEC probe into F-Squared, not Virtus, regarding possible wrongdoing based on buy/sell signals generated by an unnamed wealth management firm. (See McGovern Decl., ECF No. 89, Ex. F.) That the truth was still not in the market is bolstered by a September 2014 article reporting on F-Squared's Well Notice, which is the first time a Virtus analyst reported on the issue. Even at that

time, the known errors were attributed only to F-Squared, not Virtus.  (Browne Decl., ECF No. 95, Ex. E.)  News of the F-Squared's Wells Notice caused the "biggest one-day drop" for Virtus Partners stock in three years (Browne Decl., Ex. D), while the December 2013 and May 2014 reports did not have a statistically significant impact on the share price.

Moreover, internal emails acknowledged that the SEC investigation focused on "F-Squared marketing material, not Virtus marketing material."  (Browne Decl., ECF No. 95, Ex. L.)  And, continuing into 2015, Virtus appeared to communicate to investors that any back-testing was an oversight, not a misrepresentation.  (See Browne Decl., Ex. O (email from Virtus investor explaining "[SEC] findings sound like this is pretty clearly misrepresentation, yet, throughout our discussions this has been positioned as a clerical error and more of an oversight.").)

Accordingly, Defendants have failed to rebut the Basic presumption of reliance, and the proposed class satisfies the predominance requirement.

### ii. Affiliated Ute Presumption

Lead Plaintiff contends that it is also entitled to a presumption of class-wide reliance under Affiliated Ute because this action also involves material omissions.  See City of Livonia Employees' Ret. Sys. v. Wyeth, 284 F.R.D. 173, 183 (S.D.N.Y. 2012) ("Even if Defendants had rebutted the presumption of reliance under Basic, Plaintiff would still be entitled to the presumption of reliance under Affiliated Ute.").  In cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."  Affiliated Ute, 406 U.S. at 153.  Rather, all that needs to be shown is that the "facts withheld be material in the sense that a reasonable investor might have considered them important in making [his] decision."  Affiliated Ute, 406 U.S. at 153–54.

However, the presumption does not apply when the omissions merely "exacerbate the misleading nature of the 'alleged conduct.'" Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc., 412 F.3d 103, 109 n. 5 (2d Cir. 2005); In re Smith Barney, 290 F.R.D. at 48. Indeed, "[i]f a misrepresentation claim could be reframed as an omission claim merely by alleging that a defendant 'did nothing to dispel' its own misrepresentation, then the limitation of the Affiliated Ute presumption to omissions alone would be meaningless indeed." In re Barclays Liquidity Cross & High Frequency Trading Litig., 126 F. Supp. 3d 342, 366 (S.D.N.Y. 2015); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., No. 05-CV-1898 (SAS), 2006 WL 2161887, at *5 (S.D.N.Y. Aug. 1, 2006) ("Where positive statements are central to the alleged fraud, thereby eliminating the evidentiary problems inherent in proving reliance on an omission, the Affiliated Ute presumption does not apply.").

Here, the Complaint alleges two sets of misleading statements. The first set relates to the AlphaSector indices and is characterized in the Complaint as "materially false and misleading affirmative statements," not omissions. (Compl., ¶ 153) Thus, these misstatements are not subject to a presumption of reliance under Affiliated Ute.

The second set of misleading statements relates to a January 2013 conference call in which Aylward claimed that "[o]ur portfolio managers continued to deliver strong relative investment performance, and this performance has been a key driver of our high level sales and net flows." (Compl. ¶ 165.) Describing this statement in its July 2016 Opinion and Order, this Court observed that "Virtus Partners cite[d] proper drivers of 'sales and net flows' but omit[ted] the misleading performance history. Such a statement is a half-truth. . . ." See In re Virtus Inv. Partners, 195 F. Supp. 3d at 537 (emphasis added). Thus, unlike the statements relating to the

AlphaSector indices, Aylward's omission in the January 2013 conference call is entitled to a presumption of reliance under <u>Affiliated Ute</u>.

           b.  <u>Superiority</u>

"The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." <u>In re Vivendi Universal, S.A.</u>, 242 F.R.D. 76, 91 (S.D.N.Y. 2007), <u>aff'd sub nom.</u> <u>In re Vivendi, S.A. Sec. Litig.</u>, 838 F.3d 223 (2d Cir. 2016). Defendants do not dispute this requirement, and this Court finds that Lead Plaintiff carries its burden in this respect.

**III.    Class Period**

Defendants argue that the class period should be shortened to end in December 2013 or, at the latest, May 2014. "In the case of a securities fraud class action, courts are required to 'cut off the class period' on the date of a statement or event that 'cure[s][ ] the market.'" <u>Carpenters Pension Trust Fund of St. Louis v. Barclays PLC</u>, 310 F.R.D. 69, 97 (S.D.N.Y. 2015) (quoting <u>In re Interpublic Sec. Litig.</u>, No. 02-CV-6527 (DLC), 2003 WL 22509414, at *5 (S.D.N.Y. Nov. 6, 2003)); <u>see also</u> <u>Sirota v. Solitron Devices, Inc.</u>, 673 F.2d 566, 577 (2d Cir. 1982). Thus, the class period should end where an "announcement severed the link between the alleged misrepresentations and the stock price, even though additional information regarding the accounting irregularities came to light." <u>In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig.</u>, 247 F.R.D. 32, 39 (D.D.C. 2008).

However, "[w]hether a particular announcement . . . actually cured a prior misrepresentation is . . . a sensitive issue to rule on at this early stage of the proceedings, because it comes so close to assessing the ultimate merits in the case." <u>In re Fed. Nat. Mortg. Ass'n</u>, 247 F.R.D. at 39; <u>see also</u> <u>In re Alstom SA Sec. Litig.</u>, 253 F.R.D. 266, 291 (S.D.N.Y. 2008) ("[G]iven the inherently factual nature of these types of disputes, courts repeatedly have refused

to shorten a class period based on alleged inquiry notice.").  Courts "often limit[] their analysis to a determination of whether there is 'a substantial question of fact as to whether the release cured the market or was itself misleading.'"  In re Fed. Nat. Mortg. Ass'n, 247 F.R.D. at 39 (quoting Friedlander v. Barnes, 104 F.R.D. 417, 421 (S.D.N.Y. 1984)).  If there is "no substantial doubt as to the curative effect" of the announcement, the class period may be shortened.  Friedlander v. Barnes, 104 F.R.D. at 421.

Here, Defendants' argument is essentially the same as its "truth-on-the-market" theory, which the Supreme Court counsels is an issue for summary judgment or trial.  Amgen, 133 S. Ct. at 1204.  As previously discussed, Lead Plaintiff offered substantial evidence that the market was misled throughout the class period.  Accordingly, Lead Plaintiff's proposed class period of January 25, 2013 and May 11, 2015 is appropriate.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's motion for class certification is

granted. The class is defined as:

> all persons and entities that, during the period between January 25, 2013 and May 11, 2015, inclusive (the "Class Period"), who purchased or otherwise acquired shares of the publicly traded common stock of Virtus Investment Partners, Inc. and were damaged thereby.

This Court appoints Arkansas Teacher Retirement System as class representative and Labaton

Sucharow LLP and Bernstein Litowitz Berger & Grossmann LLP as Class Counsel.

The Clerk of Court is directed to terminate the motion pending at ECF No. 79.

Dated: May 15, 2017
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.